The provisions and effect of the act of April 14, 1860, have been much discussed in this court, and it may be regarded as settled: 1. That offences committed prior to the passage of that act, the offender cannot be punished in conformity with it, as it substitutes a different punishment for the crime of murder from that prescribed by the laws of the State at the time the offense was committed. It followed from this that no person could be punished for the crime of murder in the first degree where the offence had been committed prior to the act of April, 1860, so long as the provisions of that act continued in force. (Hartung
v. The People, 22 N.Y. 95. Same v. Same, March T. 1863;Shepherd v. The People, 25 N.Y. 406.) 2. That a law changing the punishment for offenses committed before its passage is expost facto and void under the constitution, unless the change consists in the remission of some separable part of the punishment before prescribed, or is referable to prison discipline, or penal administration, as its primary object. 3. That the punishment of death was retained by the act of April 14th 1860; that the time and manner implicating the death penalty had not been provided for by the terms of that act; and that the provision of the revised statutes, *Page 126 
fixing such time and manner, having been expressly repealed could not be invoked, to supply such omission.
4. That in reference to the crime of murder in the first degree, committed after the passage of that act, and while it remained in force, the offender could be convicted and punished pursuant to the provisions of that act, and that the proper sentence, upon the conviction for that crime, under that act, was that the prisoner should be sentenced to suffer the punishment of death, and should at the same time be sentenced to confinement at hard labor, in the State prison, until such punishment of death should be inflicted. (Lowenberg v. The People, 27 N.Y.R. 336;Jeffords v. the same, January, 1864.)
At the time, therefore, of the commission of the offense, for which the plaintiff, in error, has been convicted, the punishment prescribed by law, was that he should suffer death therefor, and that until such punishment of death should be inflicted, he should be confined at hard labor in the State prison. If, therefore, the provisions of the act of 1860 were in full force at the time of the trial, conviction and sentence of the prisoner, the sentence pronounced must be declared to be illegal, as unauthorized by the terms of that act. The legislature, by the act of April 12th 1862, and which was in force as a law at the time of the sentence, changed the punishment for the crime of murder in the first degree by a revisal of the provisions of the revised statutes, which directed the manner in which persons sentenced to death should be executed, and made it obligatory on the court to fix the day of sentence not less than four weeks nor more than eight weeks from the time such sentence was pronounced. By section second of the latter act, it is declared that no offense committed previous to the time when the act should take effect, should be affected by that act, except that when any punishment should be mitigated by its provisions, (that is, by the provisions of the act of April, 1862); such provisions should control any *Page 127 
judgment to be pronounced after that act should take effect, for any offenses committed before that time. The learned justice, who tried the prisoner and pronounced the sentence of death upon him, undoubtedly acted upon the idea that the provisions of this section were applicable to the present case, and that the punishment for the crime of murder in the first degree, had been mitigated by the law of 1862, and that consequently the punishment prescribed by the revised statutes was applicable. For by the act of 1860, the prisoner convicted of the crime of murder in the first degree was to be punished with death, and to be confined at hard labor in the State prison until such punishment of death should be inflicted. As no person so sentenced or imprisoned could be executed in pursuance of such sentence, within one year from the day on which such sentence should be pronounced, it followed that every person so sentenced to the punishment of death had also to be punished by imprisonment in the State prison, at hard labor, at least for the term of one year. It cannot be doubted that these punishments were separable, and that it was competent for the legislature, in relation to offenses committed while the act of 1860 was in force, to declare that either of them might be omitted. Such omission resulted in a mitigation of the punishment.
But the main difficulty in the present case is, the punishment revised and provided for by the act of 1862, is different from that in 1860, in other most important particulars. It is true that both acts declare that persons convicted of the crime of murder in the first degree, shall be punished with death. But by the act of 1860, such punishment could not be inflicted within one year from the day on which such sentence of death should be passed, nor until the governor of the State should issue his warrant under the great seal thereof, commanding such sentence to be carried into execution. We see, therefore, the difference in the punishment for the crime of murder, as prescribed in the act *Page 128 
of 1860, and that prescribed by the revised statutes. This court had occasion to consider this difference in the case of Hartung
v. The People, (supra), and deemed it radical. It was then said: "The change wrought by the act of 1860 in the punishment of existing offenses of murder, does not fall within either of the exceptions. It is to be construed to vest in the governor a discretion to determine whether the convict should be executed or remain a perpetual prisoner at hard labor. This would only be equivalent to what he might do under the authority to commute a sentence. But he can, under the constitution, only do this once for all: if he refuses the pardon, the convict is executed according to the sentence. If he grants it, his jurisdiction of the case ends. The act, in question, places the convict at the mercy of the governor in office at the expiration of one year from the time of the conviction, and of all his successors during the lifetime of the convict. He may be ordered to execution at any time, upon any notice, or without notice. * * * If we stop here the change effected by the statute, is between an execution within a limited time to be prescribed by the court, or a pardon or commutation of the sentence during that period, on the other hand, and the placing the convict at the mercy of the executive magistrate for the time, and his successors, to be executed at his pleasure at any time after one year, on the other; the sword is indefinitely suspended over his head, ready to fall at any time. It is not enough to say, even if that can be said, that most persons would probably prefer such a fate to the former capital punishment. It is enough to bring the case within the condemnation of the constitution, that it changes the punishment after the commission of the offense, by substituting for the prosecuted party a different one. We have no means of saying whether the one or the other would be the most severe in a given case. That would depend upon the disposition and temperament of the convict. The legislature cannot thus experiment upon the criminal laws." *Page 129 
These conclusions were arrived at without any reference to the prescription of at least one year imprisonment at hard labor in a State prison, in addition to the punishment of death. We thus have one authoritative exposition of the different punishments for murder in the first degree as prescribed by the revised statutes and in the law of 1860, and that the change of punishment in that prescribed in the latter act, by substituting for the penalty prescribed by the revised statutes, a different one, renders the act ex post facto and void. The act of 1860, sought to inflict a different punishment for the crime of murder in the first degree than was prescribed for that offense by law at the time of its commission. This rendered the act void, irrespective of the consideration of the additional punishment at hard labor in a State prison, for one year or more. If, therefore, the punishment declared by the act was obnoxious, in that it changed that prescribed by the revised statutes, which were in force at the time the offense was committed in theHartung case, it logically follows that for the same reason the punishment prescribed by the revised statutes, cannot be inflicted upon a criminal whose offense was committed while the act of 1860 was in force, and while that prescribed by the revised statutes was suspended, and which offense must be punished, if at all, in the manner pointed out in that act. Whether it can be so punished or not, depends upon the saving clause in the second section of the act of April 12 1862, and the act of April 24, 1863.
The second section of the act of April, 1862, declares that no offense committed previous to the time when that act shall take effect shall be affected by that act, except that when any punishment shall be mitigated by the provisions of that act, such provision shall control any judgment to be pronounced after the said act shall take effect, for any offences committed before that time. And section seven of that act declares that the following additional section shall be added to title one, chapter one, of the fourth *Page 130 
part of the revised statutes: "Every person who shall be convicted of murder in the second degree, and of arson in the first degree as defined in that act, shall be punished by imprisonment in a state prison for any term not less than ten years." By the provisions of the act of 1860, arson in the first degree was punishable with death and imprisonment at hard labor in a state prison until such punishment of death should be inflicted; and every person convicted of murder in the second degree was to be sentenced to undergo imprisonment in one of the State prisons, and be kept in confinement at hard labor during natural life. We see, therefore, what punishments were mitigated by the act of 1862, and that in reference to crimes of murder in the second degree and arson committed before that act took effect, they were to be punished with the milder or mitigated punishments prescribed by that act, instead of those prescribed when the same were committed. All other offenses committed previous to the time that act took effect were to be unaffected by it. The crime of murder in the first degree of which the prisoner has been convicted was, therefore, excepted from and unaffected by that act, and the prisoner upon his conviction should have been sentenced to the punishment prescribed by the act of 1860.
Great changes were introduced into the criminal code of this State in relation to the punishment of crimes by the revision of our statute law in 1830. The repealing act contained a saving clause like that found in the act of 1862, in these words: "That no offense committed previous to the time when any statutory provisions shall be repealed shall be affected by such repeal, except that where the punishment shall be mitigated by the revised statutes such mitigated punishment shall be applicable, though the offense was committed before that time." In ThePeople v. Phelps (5 Wend. 19), a question was made as to the application of the Revised Statutes to that case. The offense was committed before they took effect, and the indictment *Page 131 
and trial were subsequent. Chief Justice SAVAGE, in delivering the opinion of the court, observed that if this saving clause was applicable to the case, there could be no doubt that the indictment was valid; and that those statutes did operate upon that case, he thought there could be no question. He said: "The character of the offense remains as it was when committed, and the punishment cannot be enhanced by any act taking effect subsequently; but the proceedings must be conducted under the revised statutes. The prosecution was commenced and carried on since the first of January, and during that period the revised statutes and no other were in force. Offenses committed under the old statutes were liable to certain punishments, and no greater can be inflicted; but the prosecution must be conducted by virtue of the statutes in force when the proceedings are had."
In view of these provisions of the statutes and these authorities, we find that the punishment prescribed by the act of 1860 can only be inflicted for offenses committed while that act was in force, but that all prosecutions for such offences commenced since the act of 1862, must be conducted by virtue of the statutes in force when the proceedings are had. The saving clause in the act of 1862 preserves intact the punishment prescribed by the act of 1860, for all offenses committed after that act went into effect, and before its repeal, except when by the act of 1862 the punishment had been mitigated, and in such case the mitigated punishment is to be inflicted. But although a part of the punishment on conviction for the crime of murder in the first degree, namely, that of imprisonment in the State prison until the death penalty should be executed, was taken away by the act of 1862, and which might lawfully be done, as it was clearly separable from the other, and was an increase and in addition to the death penalty, yet we see that the punishment of death, for the crime of murder in the first degree, as contemplated by *Page 132 
the act of 1860, is a very different punishment from that inflicted for the same offense by the provisions of the revised statutes which were brought into operation by the act of 1862. But for the saving clause of the act of 1862, the prisoner could not legally be punished for the crime whereof he has been convicted. The judgment in this case was pronounced on the assumption that the prisoner was to be punished according to the act of 1862. We think this view of the law was erroneous, and consequently the sentence and judgment were erroneous and must be reversed. It would follow from these considerations and the authority of the case of The People v. Shepherd, (25 N.Y. 406), that a wrong judgment having been pronounced, although the trial and conviction were regular, this prisoner could not be subjected to another trial, and would be entitled to his discharge. That would unquestionably be so but for the act of April 24, 1863. In the case of Lowenberg, (supra), we held that the provisions of that act had no application to a case pending in this court at the time it took effect as a law. In the present case that act became operative before the judgment and sentence were pronounced and given, and before the writ of error was prosecuted to this court. It was, therefore, in force when the writ of error in this case was prosecuted, and its provisions are applicable to the duty imposed upon this tribunal, by virtue of that proceeding. This act declares that the appellate court shall have power upon any writ of error, when it shall appear that the conviction has been legal and regular, to remit the record to the court in which such conviction was had, to pass such sentence thereon as the said appellate court shall direct. But for the authority conferred upon this court by this statute, it would have had no power, upon reversal of the judgment of the supreme court, either to pronounce the appropriate judgment or remit the record to the oyer and terminer to give such judgment. This is well settled by authority. (The *Page 133 King v. Bounce, 7 Adol. and Ellis, 58; Shepherd v.Commonwealth, 2 Met. 419; Christian v. Commonwealth, 5 ib. 530; The King v. Ellis, 5 Barn. and Cress. 395; Phillips v.Barry, 1 Lord Raymond, 5; The People v. Taylor, 3 Denio, 91; O'Leary v. The People, 4 Parker Crim. R. 187; Shepherd
v. People, supra.) But the power to remit the record in the present case is ample, and it was intended by the legislature to confer it under the circumstances now presented. There is no question made as to the legality or regularity of the conviction of the prisoner, and we being of the opinion that the only error committed was in not pronouncing the proper sentence and judgment upon such conviction, it is made our duty by this statute to remit the record to the Kings county oyer and terminer to pronounce upon the conviction the proper judgment. And this court does accordingly direct that the record in this action be remitted to the court of oyer and terminer of Kings county, and that such court do sentence the prisoner to suffer death for the crime whereof he stands convicted, and that he be confined at hard labor in the State prison at Sing Sing until such punishment of death shall be inflicted.
WRIGHT, SELDEN and INGRAHAM, JJ., concurred.