PHILIP BINDERNAGLE, PLAINTIFF IN ERROR, v. THE STATE OF NEW JERSEY, DEFENDANT IN ERROR.

1. The defendant below was indicted for keeping a disorderly house, and the evidence tended to prove that two buildings in close proximity to the defendant's tavern were maintained as places for gambling. *Held,* that the circumstances disclosed by the testimony warranted the conclusion that both places were kept by the defendant as a single establishment, and justified his conviction.

2. In cases covered by section 192 of the Crimes act and paragraphs 169 and 216 of Criminal Procedure, an order made by the court when sentencing a convict to imprisonment at hard labor for the term of one year, that the imprisonment shall be served in the state prison, forms no part of the judgment proper, and if unlawful may be annulled on error without impairing the judgment itself.

---

On error to the Supreme Court. For opinion of the Supreme Court, see 31 *Vroom* 307.

For the plaintiff in error, *Allan L. McDermott.*

For the state, *Charles H. Winfield,* prosecutor of the pleas, and *Samuel H. Grey,* attorney-general.

The opinion of the court was delivered by

DIXON, J. At the April Term, 1896, of the Hudson County Oyer and Terminer, the defendant below was indicted for keeping a disorderly house in Weehawken between March,

1895, and the finding of the indictment, and having been thereon convicted in the Hudson Quarter Sessions and his conviction having been affirmed in the Supreme Court, he has brought into this court "the record of the proceedings at the trial" under the act of May 9th, 1894 (*Gen. Stat.*, p. 1154), as well as the record of the judgment and bills of exceptions.

Upon the main argument in this court the defendant relied for reversal on two propositions—*first*, that the evidence did not warrant the verdict, and *second*, that the trial judge erred in refusing to charge that there was no evidence of any right in the defendant to exercise control over the southerly building mentioned by the witnesses.

The circumstances disclosed by the testimony are these: That during the time covered by the indictment the defendant kept a tavern at Weehawken, near the ferry from New York; that adjoining his tavern on the north was a dwelling-house owned and occupied by his mother; that adjoining the dwelling on the north was a long low building, also owned by his mother but not used except as hereafter stated; that a few feet from the tavern, on the south, was another long low building, used only as hereafter stated, and belonging to an unknown owner; that from a side door of the defendant's bar-room a pathway or passageway led to the rear door of the low building on the north, and that the entrance to the building on the south was near the end of the piazza in front of the tavern; that the defendant's mother never looked after the building on the north, never let it to anyone or got any rent for it, but that the defendant took care of it for her; that these four buildings were in an out-of-the-way place and there were no other buildings within five hundred feet of them except one which had formerly been a pool-room and was then a factory; that on many occasions during the time embraced in the indictment crowds of men came over from New York, visited the defendant's bar-room and sauntered around the premises; that on an afternoon in January, 1896, a number of persons came over from New York and went directly into the northerly building and there

openly engaged in gambling at "red and black;" that on an afternoon in April, 1896, a crowd, numbering between one hundred and two hundred, were in the same building, openly buying pools on horse-races run in St. Louis and New Orleans, and at the same time from fifty to seventy-five men were openly gambling at faro, poker, roulette and other games in the building south of the tavern, the people passing back and forth from one building to the other; that the defendant, as a witness on his own behalf, had no reasonable explanation to offer of the inducement which brought these crowds of idlers from New York or of the right the gamblers seemed to have to use the northerly building which was under his care solely, but confined himself to a bare denial of knowledge that there had been any gambling anywhere about the premises.

We think these circumstances fully warranted the jury in finding that the defendant maintained the northerly building as a disorderly house. The openness with which the gambling was carried on, the crowds of men participating in it, his business of supplying drink in such close proximity to the gambling-room, with a visible pathway leading therefrom in the rear to his bar-room, coupled with the fact that he and he alone took care of the gambling-room, point strongly to the conclusion that he knew of the gambling and authorized the use of the room for gambling purposes.

With regard to the southerly building, there are two answers to the claim of the defendant.

*First.* The use of that building for gambling was so closely connected with the use of the northerly building for the same purpose as to make it a fair question for the jury whether, if the defendant maintained the latter, he did not also maintain the former. There appeared to be no other proprietor for either of them, nor did any other person seem to have any interest in their maintenance, while no doubt both afforded material aid to the traffic over the defendant's bar. It was a permissible inference from all the circumstances that both gambling-rooms were parts of one establishment, and as such were under the defendant's control.

*Secondly.* The only witness who testified to gambling in the southerly building testified to the pool-selling in the northerly building, and it is incredible that the jury should have believed his testimony as to the former and not have believed it as to the latter.    If, therefore, they concluded that the defendant maintained a gambling-room in the southerly building they must have concluded that he also maintained one in the northerly building, and the verdict would not have been different if the jury had been charged as requested.    If, on the other hand, the jury did not believe that the defendant controlled the southerly building, they must have acquitted him of criminality with respect to that building, under the charge, which was given to the effect that his guilt depended on his keeping or causing to be kept the gambling establishment.    Hence it appears that this refusal to charge could not, in any rational view of the case, have prejudiced the defendant on the merits.

Our conclusion is that the defendant was lawfully convicted.

After this conclusion was announced, the defendant applied for a further hearing, because he had been sentenced to confinement at hard labor for one year in the state prison, notwithstanding the act of May 15th, 1894 (*Gen. Stat., p.* 1162), which declares that such a term of imprisonment must be served in the county penitentiary.    This application having been granted, the point has been argued before us.

The objection is not one that can be made under the act of May 9th, 1894 (*Gen. Stat., p.* 1154), which is limited to proceedings at the trial (*Kohl* v. *State,* 36 *Atl. Rep.* 104), nor is there any assignment of error directed against it.    Still, as the matter complained of is clearly illegal and prejudicial to the defendant, we think the court should exercise its corrective power.

The pertinent statutes are section 192 of the Crimes act (*Gen. Stat., p.* 1083) and paragraphs 169 and 216 under the title " Criminal Procedure " (*Gen. Stat., p.* 1117).

Section 192 provides that, for such a misdemeanor as that of which the defendant is convicted, the offender shall be

punished by imprisonment at hard labor or otherwise, not exceeding two years, or by fine not exceeding $500, or both. This section indicates the scope of the matters relating to the penalty which are committed to the judgment of the court. It may determine the duration of the imprisonment—not exceeding two years—and its character—whether it shall be at hard labor or not—but the court is not, in terms, authorized to designate the place of imprisonment.

Paragraph 169 under Criminal Procedure enacts "that every person sentenced to hard labor and imprisonment under the laws of this state for any time not less than six months shall, within twenty days after such sentence, be transported * * * by the sheriff of the county * * * to the state prison, and there delivered into the custody of the keeper of said prison, together with a copy of the sentence of the court ordering such punishment, * * * and said person so delivered to the keeper of said prison shall be safely kept therein until the time of his confinement shall have expired."

The later paragraph (216), enacted May 15th, 1894, provides "that in any county of this state wherein a penitentiary is located, every person sentenced to hard labor and imprisonment under the laws of this state, for any time over six and not exceeding eighteen months, shall be imprisoned in the penitentiary located wherein such conviction was had, instead of state prison."

The language of these paragraphs plainly confines the scope of the sentence to the duration and character of the imprisonment, and whenever the offender is sentenced to imprisonment at hard labor for six months or over, the statute designates the place of imprisonment. It follows from this that in such cases the designation of the place of imprisonment forms no part of the judgment or sentence of the court. While the place of confinement may be and usually is declared by the court when pronouncing sentence, and is usually entered upon the minutes and even inserted in the record, as if it were part of the judgment, yet in legal contemplation it is not such, and its legitimate function is merely by way of

direction to the executive officers of the court as to the mode in which the judgment or sentence shall be carried into execution. This interpretation of the statutes is in harmony with the doctrine of the common law, according to which the place of imprisonment was not specified in the sentence, but was indicated by the warrant issued thereon. *Ex parte Waterman*, 33 *Fed. Rep.* 29; 4 *Bl. Com.* 404; *Dodge* v. *State*, 4 *Zab.* 455, 466.

It appears by one of our public statutes (*Pamph. L.* 1872, *p.* 1129) that there is a penitentiary in the county of Hudson, and consequently the direction that the defendant should be confined at hard labor for the term of one year in the state prison was illegal so far as it related to the place of imprisonment; but as that direction forms no part of the legal judgment, it may now be set aside and annulled without impairing or affecting the judgment itself.

Our opinion therefore is that the designation of the place of imprisonment should be stricken from the record as not legally a part of the judgment of the Quarter Sessions, that the judgment then remaining in the record should be affirmed and the record should forthwith be remitted to the Sessions, in order that the judgment may be executed according to law.

GARRISON, J. (dissenting). This judgment should be reversed. The testimony showed that gambling was carried on in two houses in Weehawken, one situated to the north of the defendant's saloon and the other, called the "casino," to the south of it. There is nothing to show whether these houses were run in opposition to each other or whether they were conjointly operated. The fact that visitors from each also visited the bar kept by the defendant is of no legal significance; the same inference would attach to the ferry company that transported them. The house to the north of the defendant's saloon was owned by Mrs. Hoffman, who occupied as her residence the part not used for gambling; the casino was owned by parties living in New York and was occupied solely as a gambling-house. With respect to the house to the

north, the presumption that its owner, who resided in it, had authority over it and was responsible for its disorderly character, was met by the testimony of that owner, who was the defendant's mother, that " her son took care of the property." The meaning of this expression was for the jury, which might have found that it did not indicate beyond a reasonable doubt that the defendant had authority over the use to which the property should be put or that he ever assumed or exercised such an authority. With respect to the casino no such question could arise, its owners were non-resident; if the defendant was at all responsible for the uses to which this house was put, he was solely so. At the trial testimony was introduced showing that gambling was carried on in both of these houses, and the defendant was found guilty under a charge that made him equally responsible for each.

If there was no testimony that the defendant kept the casino he was unlawfully convicted, for it may well be that the jury found him guilty because of the disorderly character of that house alone, since it had no resident owner or occupier. There was no evidence whatsoever that connected the defendant with the casino or with the uses to which its owners put it. The argument of counsel that whoever was guilty of maintaining the Hoffman House was *ipso facto* guilty of maintaining the casino is unintelligible to me. And, since the Hoffman House by virtue of its resident ownership presented a strong ground for exonerating the defendant with respect to it, which did not exist in the case of the casino, this court cannot say that under the charge the verdict of the jury did not rest wholly, or at least in part, upon the testimony concerning the latter place.

The antiphrasis " non-injurious error " is singularly inapplicable to such a state of facts.

It cannot be said that the defendant did not promptly object to the introduction of testimony with respect to the casino, or that he did not oppose its submission to the jury by every legal means. The judicial history of the trial contained in the bill of exceptions shows that when the prosecutor

asked the first question tending to prove the unlawful purposes to which the casino was put, the defendant's counsel objected, upon the ground of the irrelevancy of the inquiry, and that thereupon the following colloquy and ruling occurred:

" Mr. Winfield—If I don't connect him with the room of course it will be stricken out. I called this man because he wanted to get away. [Objection overruled.]

" To this ruling defendant prays an exception may be allowed, and it is allowed and signed and sealed accordingly.
"R. S. HUDSPETH, *J.*  [L. S.]"

Notwithstanding the defendant held this bill of exception, at the close of the testimony his counsel made of the court five requests to charge, which, in various forms, required the court to relieve the defendant from the testimony with respect to the casino, the last of which was in these words:

" Mr. McDermott—I ask the court to charge that the jury cannot convict the defendant unless he had control of the premises or participated in their management."

To all of these requests the reply of the court was, " I decline to charge other than as I have already charged." What the court had already charged was in such form as " adjoining building or buildings," " various buildings " and " various premises," by all of which the defendant's guilt was put to .the jury as resting indifferently upon either the mother's house or the casino or both.

The judgment of a criminal court into which this error enters ought not to be affirmed. I therefore vote that the judgment be reversed, in order that the indictment may be tried *de novo.*

This conclusion renders it unnecessary for me to consider whether this court may affirm the judgment brought before it, by which the plaintiff in error was sentenced to unlawful imprisonment, as being a lawful judgment excepting in that the nature of the imprisonment imposed by it was contrary to law.

After the delivery of the above opinions, so far as they relate to the legality of the conviction, the following vote was taken on the general affirmance of the judgment below:

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, COLLINS, DIXON, GUMMERE, LUDLOW, ADAMS, BOGERT, HENDRICKSON, KRUEGER, NIXON. 11.

*For reversal* — GARRISON, VREDENBURGH. 2.

Afterwards, and at the November Term, 1897, a petition was filed on behalf of the plaintiff in error for a reargument upon the question whether the imprisonment of the plaintiff in error should not have been in a penitentiary instead of the state prison.

The vote to reconsider the previous vote of general affirmance was as follows:

*Aye* — THE CHANCELLOR, COLLINS, DIXON, GARRISON, GUMMERE, LUDLOW, ADAMS, BOGERT, HENDRICKSON, KRUEGER, NIXON, VREDENBURGH. 12.

*Nay* — THE CHIEF JUSTICE. 1.

After hearing the reargument Dixon, J., delivered the opinion of the court on the new question as above stated, and thereupon the court ordered and adjudged that the judgment heretofore rendered in this case be reconsidered, and that the designation of the place of imprisonment be stricken from the record as no part of the judgment; that the judgment on the record be reaffirmed, and that the record be remitted to the Court of General Quarter Sessions of Hudson county, to the end that the judgment may be executed according to law.

MAGIE, CHIEF JUSTICE (dissenting). A brief statement of the course taken by this writ of error seems essential to an understanding of the votes on the different questions which arose thereon and the reasons for my own votes.

*First.* When the cause came up for determination at November Term, 1897, I voted to affirm the judgment of the

Supreme Court upon an entire concurrence with the views expressed on the merits of the case by Mr. Justice Dixon.

*Second.* Application was afterward made for a rehearing, upon the ground that the judgment was erroneous in a respect not pointed out by the assignments of error nor presented by the previous arguments.

The error thus sought to be taken advantage of did not affect the term of confinement prescribed in the judgment, viz., one year, nor the kind of imprisonment, viz., at hard labor, but only the place in which such imprisonment was directed to be served.

The rehearing was urged solely on the ground that the judgment directed the imprisonment to be served in the state prison, while the law required that when the judgment was for such an imprisonment it should be served in the county penitentiary.

The act appealed to was passed, as appears by its preamble, solely for the relief of an overcrowded state prison.

I found myself obliged to vote against a rehearing, on the ground that the plaintiff in error had had and had neglected the opportunity to present this question, and ought not to be permitted to afterward present it, the alleged error being in no respect injurious to him.

*Third.* But my associates having accorded a rehearing, I felt obliged to dissent from the conclusion reached by them, viz., that the direction of the place of imprisonment can be eliminated from such a judgment by a court of review, and the judgment, so altered, be affirmed.

In my judgment, the sentence of the court, in a case within the provisions of the act to which appeal is made, must designate the place in which the convicted person is to be imprisoned. This results from the proviso of the act which makes its obligatory force inapplicable in case the convicted person has previously served a term in the state prison, in which case the court is given discretion to sentence to imprisonment, either in the state prison or the penitentiary. When, therefore, the sentence, on its face, exhibits an exercise of the dis-

cretion accorded to the court, so much of it is an integral and essential part of the judgment to be examined on error like any other part thereof. Nor can it be conceived that, under this legislation, a court may omit to designate a place ·of imprisonment and leave to the official charged with the execution of the sentence, the duty of determining where such imprisonment is· to be served.

When, therefore, a sentence and judgment shows, as in this case, an apparent exercise of a discretion committed to the trial court, no power, in my judgment, exists in a court of review to eliminate that part of the sentence if unsupported by the record.

That no power existed at common law in a court of review, before which a criminal conviction was brought by writ of error, either to amend the judgment or to pronounce such a judgment as ought to have been pronounced, or to reverse and remand to the court below for a proper judgment, has been repeatedly held in the English courts. ·Their view is exhibited in *King* v. *Ellis,* 5 *Barn. & C.* 395, and *King* v. *Bourne,* 7 *Ad. & E.* 58.

The courts of this country have, I think I may say without serious dissent, declared that, upon a writ of error in a criminal case, the power of a court of review is also. thus limited, in the absence of legislation conferring broader powers. Such legislation has been adopted in almost every state except this.

It was this concensus of opinion and precedent which led to the decision of the Supreme Court in *State* v. *Gray,* 8 *Vroom* 368. The opinion of Mr. Justice Van Syckel collected many of the cases in our courts, to which may be added the following : *Ratzky* v. *People,* 29 *N. Y.* 124 ; *Shepherd* v. *People,* 25 *Id.* 406 ; *McKee* v. *People,* 32 *Id.* 239 ; *People* v. *Bork,* 96 *Id.* 188 ; *In re Harris,* 35 *Atl. Rep.* 55 ; *Ex parte Medley,* 134 *U. S.* 160 ; *In re Mills,* 135 *Id.* 263 ; *In re Bonner,* 151 *Id.* 242 ; *In re Frederick,* 149 *Id.* 70 ; *Ballew* v. *United States,* 160 *Id.* 187. In the case last cited a judgment in a criminal case was reversed because of an unwarranted sentence, and the cause was remanded to the court

below to pronounce such sentence as the law required, but such result was reached because power to do so was held to have been conferred upon the Supreme Court by various acts of congress.

The record before us discloses no ground justifying the court below in exercising the discretion confided to it and sentencing plaintiff in error to such imprisonment. As I deemed such a judgment unwarranted by law I voted to reverse it, because no power had been conferred to correct the error otherwise.

*Aye and affirmance*—THE CHANCELLOR, COLLINS, DIXON, LUDLOW, BOGERT, HENDRICKSON, KRUEGER, NIXON.    8.

*Nay and reversal*—THE CHIEF JUSTICE, GUMMERE, VAN SYCKEL.    3.

*Excused from voting*—GARRISON, VREDENBURGH.    2.