THE STATE, DEFENDANT IN ERROR, v. GEORGE D. HUG-GINS, PLAINTIFF IN ERROR.

Submitted December 9, 1912—Decided June 30, 1913.

1. Under an indictment charging a man in separate counts with rape and with carnal abuse, a general verdict of "guilty in manner and form as he stands charged," is to be supported on the count for carnal abuse, where the evidence showed him to be guilty of that offence but not of rape.

2. Where a general verdict of guilty was rendered upon an indictment charging a man in separate counts with rape and with carnal abuse, which conviction is to be sustained as to carnal abuse, and he was given an indeterminate sentence, the maximum of which is the extreme penalty for rape and is in excess of the maximum sentence which may be imposed for carnal abuse, this court, having to reverse the judgment because of error in the sentence, has the power under section 144 of the Criminal Procedure act (*Comp. Stat.*, *p.* 1867), to render such judgment as should have been rendered, that is, by amendment make the sentence such as might have been passed, or to remand the case for that purpose to the court before which the conviction was had.

3. Where there are several counts in an indictment each charging a distinct crime, a general verdict of guilty amounts to a conviction of each separate offence, and, even if the verdict cannot be supported as to one or more of the crimes charged, it will be upheld as to the offence described in a single good count.

On error to the Supreme Court, whose opinion is reported in 54 *Vroom* 43.

For the plaintiff in error, *Robert Peacock* and *Davis & Davis.*

For the defendant in error, *Samuel A. Atkinson.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. In this case the jury found the defendant "guilty in manner and form as he stands charged." This was a general verdict of guilty upon all the counts of the indictment. They were six in number—*first,* that the defendant, George D. Huggins, in and upon one Viola Fallis, violently and feloniously did make an assault, and her, the said Viola, then and there forcibly and against her will feloniously did ravish and carnally know contrary to the form of the statute and against the peace of the state, &c.; *second,* that the defendant, being a male person of the age of sixteen years and over, one Viola Fallis, a woman child over the age of twelve years and under the age of sixteen years, to wit, of the age of fourteen years, did unlawfully and carnally know and abuse without her consent, &c.; *third,* that the defendant, being a male person of the age of sixteen years and over, one Viola Fallis, a woman child over the age of twelve years and under the age of sixteen years, to wit, of the age of fourteen years, did unlawfully and carnally know and abuse with her consent, &c.; *fourth,* that the defendant, in and upon one Viola Fallis, a woman child under the age of sixteen years, to wit, of the age of fourteen years, feloniously did make an assault with intent her the said Viola Fallis then and there feloniously to unlawfully and carnally know and abuse without her consent, &c.; *fifth,* that the defendant, in and upon one

Viola Fallis, a woman child under the age of sixteen years, to wit, of the age of fourteen years, feloniously did make an assault with intent her the said Viola Fallis then and there feloniously to unlawfully and carnally know and abuse with her consent, &c.; *sixth,* that the defendant did unlawfully and indecently make an assault in and upon one Viola Fallis, and did then and there unlawfully and indecently and against the will of the said Viola Fallis pull up the clothes of the said Viola Fallis and placed the private parts of the said George D. Huggins against the private parts of the said Viola Fallis, and did then and there otherwise ill use and ill treat her, &c.

This case was reviewed in the Supreme Court on error to the Burlington Quarter Sessions and the judgment was affirmed. *State* v. *Huggins, 54 Vroom* 43.

It is argued to us that there was no evidence before the jury of the offence of common law rape which is charged in the first count of the indictment, and that, therefore, the trial court should have granted the motion of defendant's counsel to direct a verdict of not guilty on that count at the close of the case. To this we agree; but hold the error to be harmless for reasons hereafter to be stated.

If any reason existed for compelling the prosecutor to elect on which of the other counts he would proceed to trial no motion was made in that behalf, and the whole case was submitted to the jury without objection save as to the motion to acquit on the count for rape.

Rape at common law is defined by Blackstone as "the carnal knowledge of a woman forcibly and against her will." 4 *Bl. Com.* 210.

Our statute defining rape and carnal abuse, and providing for their punishment *(Comp. Stat., p.* 1783, § 115), as it stood at the time of the defendant's crime, and as it still stands, reads as follows:

"Any person who shall have carnal knowledge of a woman forcibly against her will, or shall aid, abet, counsel, hire, cause or procure any person or persons to commit the said offence, or who being of the age of sixteen or over, shall un-

lawfully and carnally abuse a woman child under the age of twelve years, with or without her consent, shall be guilty of a high misdemeanor, and punished by a fine not exceeding five thousand dollars, or imprisonment at hard labor not exceeding thirty years, or both, or who being of the age of sixteen or over, shall unlawfully and carnally abuse a woman child over the age of twelve years and under the age of sixteen years, with or without her consent, shall be guilty of a high misdemeanor, and punished by a fine not exceeding two thousand dollars, or imprisonment at hard labor not exceeding fifteen years, or both."

While there was no testimony showing that any resistance was made by the girl in the case at bar, nevertheless, assuming that she consented, although she says she did not, being only fourteen years of age and therefore incapable in law of giving consent, the crime was that of carnal abuse—statutory rape so called. It had in it one element of rape, namely, the use of force in the act which was accomplished against her will, for she had no will to oppose to her ravisher's designs. We say "force," because in *Farrell* v. *State,* 25 *Vroom* 416, the Supreme Court observed (at *p.* 419), speaking of this crime: "The offence could not be committed without an assault upon the person of the female." And such an assault upon the person certainly presupposes force, and differs from a simple assault disassociated from a battery. The statute renders the female child incapable of giving consent.

One difference between the two offences of common law rape and carnal abuse described in the statute lies in the punishment. For the former the penalty denounced is a fine not exceeding $5,000 or imprisonment at hard labor not exceeding thirty years, or both; for the latter a fine not exceeding $2,000 or imprisonment at hard labor not exceeding fifteen years, or both. The sentence of the court in this case was that the defendant "be imprisoned at hard labor in the state prison for his offence aforesaid for a term of not less than five years and not more than thirty years, and further stand committed until the costs of prosecution are paid."

That the defendant was guilty of the crime of carnal abuse, commonly called statutory rape, is clear. And the general verdict of guilty upon all counts is certainly a conviction on the count of the indictment charging that offence.

Where there are several counts in an indictment, each charging a distinct crime, a general verdict of guilty amounts to a conviction of each separate offence, and even if the verdict cannot be supported as to one or more of the crimes charged, it would be an anomaly and a grave defect of criminal justice, if an entire reversal were necessitated, because, while conviction on one or more of the counts was legal, there nevertheless had to be a reversal on another or other counts. Such a conviction will be upheld if there be a good count describing the offence.

On an indictment containing several counts, some good and others bad, a general verdict of guilty on all the counts will be upheld if there is a single good count to support it. See *Mead v. State,* 24 *Vroom* 601. And a conviction upon all of several good counts must certainly be as valid as to a count upon which the conviction can be sustained, as it would be where there were good and bad counts, and the conviction was to be supported on a single good count. *State v. McCauless,* 9 *Ired.* (*N. C.*) 375, is an authority the other way, and there may be others, but, so far as the doctrine here enunciated is not in accord with adjudications in other states, we decline to follow them.

It is suggested that the result reached in this case would, on an indictment for murder, followed by a conviction of murder in the first degree, which was erroneous for legal error in the trial, require us to sustain the conviction as one for murder in the second degree or manslaughter, if the evidence warranted the conviction for either of those offences, because in legal effect an indictment for murder contains a count for murder in the second degree and the crime of manslaughter is necessarily included in the higher one charged in the indictment. But the suggestion is not well founded, for the reason that on an indictment charging murder, and an erroneous verdict of murder in the first degree, the court could

not say that the jury found the defendant guilty of murder in the second degree or manslaughter, when in fact they did neither, and, besides, the court would be powerless to presume that they would have convicted of one or the other, second degree or manslaughter, and, therefore, upon a reversal, there would have to be a *venire de novo.* But, if an indictment for murder (which is always the same—for murder generally—and requires the jury to find the degree) should contain a count for manslaughter and there was a general verdict of guilty as charged, and the judgment of guilty of murder in the first degree had to be reversed, the conviction of manslaughter, if supported by the record, could and should be sustained.

The second and third counts charge the defendant, one with unlawfully and carnally knowing and abusing the girl without her consent, and the other the same offence with her consent. Now, "carnal abuse" is an act of debauchery of the female sexual organs by those of the male which does not amount to penetration, while carnal knowledge connotes penetration. *State* v. *Hummer,* 44 *Vroom* 714, 718.

In the case at bar there was evidence tending to show penetration had been accomplished, and the Supreme Court so held; but, whether so or not, there was certainly evidence of "carnal abuse." In fact the offence commonly called statutory rape consists of carnal abuse and not of carnal knowledge, which denotes penetration.

Although the evidence doubtless did not warrant the conviction of the defendant for the crime of common law rape, nevertheless, no prejudicial error resulted to him in the refusal of the trial court to direct his acquittal upon that charge, because there was evidence amply justifying the conviction for carnal abuse, and the prosecution was entitled to go to the jury on the count charging that offence. The general verdict of guilty is supportable on that count.

A prejudicial error, however, supervened upon the record of conviction, and it lies in the sentence which was passed upon the defendant. That sentence was one for rape at common law, namely, thirty years as a maximum penalty, instead of

one for carnal abuse, namely, fifteen years as a maximum penalty. This point is not made before us by any exception or specification of cause for reversal, nor was it made in the Supreme Court, but it may be said to be involved in the consideration of the case on error, because, in disregarding the conviction on the first count as involved in the general verdict, the defendant cannot, of course, be punished by a sentence which imposes a penalty in excess of that visited upon the crime for which he stands lawfully convicted, namely, carnal abuse. Formerly in England and in this state an excessive sentence rendered the judgment illegal and called for a reversal for want of power in the court above to either correct the sentence or remand the case to the court below for that purpose. See *State* v. *Gray*, 8 *Vroom* 368; *Roop* v. *State*, 29 *Id.* 487. To remedy this defect section 144 of the Criminal Procedure act was passed in 1898 (*Comp. Stat., p.* 1867), which provides as follows:

"Whenever a final judgment in any criminal case shall be reversed upon a writ of error, on account of error in the sentence, the court in which such reversal was had may render such judgment therein as should have been rendered, or may remand the case for that purpose to the court before which the conviction was had."

It is, therefore, perfectly obvious that, if this court be required to reverse on account of error in the sentence only, it has the power to render such judgment as should have been rendered, or to remand the case for proper sentence to the trial court, so that the anomaly of a new trial to attain that purpose may be avoided, one which might prove entirely abortive by reason of a possible acquittal on the same evidence which satisfied a former jury of defendant's guilt.

The term which the prisoner in this case was sentenced to serve is undoubtedly a part of the judgment, and in that respect this case is unlike the case of *Bindernagle* v. *State*, 32 *Vroom* 259, decided in this court in the year 1897. That decision doubtless caused the legislature of the next year (*1898*) to write section 144 into the revised Criminal Procedure act. In the Bindernagle case the defendant was sentenced to im-

prisonment at hard labor in the state prison for the term of one year. By the then existing act of the legislature a sentence of imprisonment for over six and not exceeding eighteen months in any county having a penitentiary was made to be served in the penitentiary instead of the state prison, and this court held that the provision for imprisonment in the state prison formed no part of the judgment proper and might be annulled on error without impairing the judgment itself. In other words, the legislature having provided that a sentence of the duration imposed by the judge in the Bindernagle case was to be served only in a particular penal institution, namely, a county penitentiary, the sentence that the time be served in an institution other than that provided by law was no part of the judgment, that judgment comprehended the *term* of imprisonment only, and the statute provided the *place* of imprisonment. Now, in this case, the term of imprisonment, namely, thirty years, is part of the judgment of the court below, and is excessive and illegal as applied to the offence for which the defendant was properly convicted, and while we are required to reverse the judgment removed here on error because of its erroneous character, nevertheless, under section 144 of the Criminal Procedure act, *supra,* we may render such judgment in this court as should have been rendered, or remand the case for that purpose to the Burlington Quarter Sessions before which the conviction was had. The prosecutor may move for either form of relief as he may elect.

The questions dealt with by the Supreme Court were, in our judgment, properly decided; and the questions raised there which were not noticed, and which have been raised before this court, we deem to be without merit.

PARKER, J. (dissenting). I am unable to concur in the reasoning of the prevailing opinion or in the result reached by the majority of the court. To reach that result section 144 of the Criminal Procedure act is invoked. That section, which is quoted in the majority opinion, enables the court of review to correct an error in the sentence or remand the case to the trial court for such correction. But as this power is

not given in case of trial error, but only for error in the
sentence imposed, the court, in order to rest upon it in this
case, has held that the error discussed was an error in the
sentence. The error in question is not accurately pointed out
in the majority opinion. It consisted in a charge that the
jury might convict of rape even if the female consented, as
she was under the age of sixteen, though above the age of
twelve. The language of the court was this:

"But the law as decreed by the legislature says that a girl
under the age of sixteen years cannot give her consent, and,
therefore, if he have sexual intercourse with the girl under
the age of sixteen years, with or without her consent, he is
guilty of rape. This, I think, relates generally to the first
three counts in the indictment."

This was excepted to and is duly assigned for error. That
it was erroneous cannot be doubted; for whether the girl con-
sented or not was clearly a jury question on the evidence, and
absence of consent is a necessary element of the crime of rape
as the name is ordinarily used.

It is noticeable that our statute (*Comp. Stat.* 1783, §
115) follows (a) the common law idea of rape of a woman
forcibly and against her will, and (b) the English statute of
unlawful and carnal knowledge and abuse of a girl under
twelve, following 18 *Eliz., c.* 7, § 4 (*Bish. Cr. L.,* § 1112),
and which, as Mr. Bishop says, "created an offence in the
nature of rape in which the want of consent was not an ele-
ment." The word "know" has been omitted (see *State* v.
*Hummer,* 44 *Vroom* 718), but this does not change the classi-
fication of this crime with rape, for the section (115) pre-
scribes these punishments:

Rape, carnal abuse under twelve, with or without consent,
$5,000, thirty years.

Carnal abuse over twelve and under sixteen, with or with-
out consent, $2,000, fifteen years.

It may well be that an indictment for rape at common law
will support proof of carnal knowledge of a girl under twelve
with her consent. The two things went together in the statute
of Westminster—3 *Edw. I., c.* 13 (*Bish.,* § 1109)—and sup-

port the decisions cited in 33 *Cyc.* 1426. But this girl was over twelve, and so defendant could be convicted only of rape without her consent or carnal abuse with a different punishment.

The jury convicted defendant of rape in view of these erroneous instructions, and the sentence was justified by such conviction alone and not under any other count of the indictment. Manifestly, as it seems to me, there was no error in the sentence, which was fully supported by the conviction, if that were legal. If the conviction had been for carnal abuse under the second count, and the sentence had been for rape, that would have been a case for the application of the statute. Examples of such application are found in *State* v. *Carrigan,* 53 *Vroom* 225; *State* v. *Parker,* 54 *Id.* 172, and *State* v. *Lewis, Id.* 161. *Bindernagle* v. *State,* 32 *Id.* 259, cited .in the main opinion, would have been an appropriate case for the statute if it had then been in force. In all these cases the conviction was sustained, but the sentence was beyond what such conviction warranted. In the case at bar the sentence is warranted by the conviction, and this court properly holds that the conviction itself was erroneous, but in the same breath transfers the error to the sentence on the theory that the evidence warranted a conviction of one of the lesser crimes charged in the indictment, and accordingly turns a conviction of rape into a conviction for carnal abuse, &c., and prescribes the appropriate sentence therefor. What will the record say as modified by our *remittitur?* It now shows a verdict and judgment of guilty of rape and sentence accordingly. We modify the sentence or direct the trial court to modify it. Will the record continue to brand this defendant as convicted of rape when he was illegally convicted thereof? Or will the record be amended by altering the verdict and judgment of guilty on all counts, to guilty on all counts but the first? And if the latter, what authority resides in this court to alter that verdict except by reversing the judgment and awarding a *venire de novo?* This is not a case of some bad and some good counts. All the counts are good, but the conviction on one was illegal; and the practice in such case before the act

of 1898 would have required a reversal.   Mr. Bishop, in volume 1 of his *Criminal Procedure,* section 1015, subsection 3, says, "Erroneous instructions on one of two good counts will be ground for vacating a general verdict of guilty."   The authority cited in the footnote is *State* v. *McCauless,* 9 *Ired.* (*N. C.*) 375.   In that case the first count was for a forcible trespass and the second count for assault and battery.   Both counts were good, but there was error in the instruction with regard to the first count.   The court said (at *p.* 377):

"It is insisted that the defendants being properly convicted upon the second count, that will sustain the judgment, notwithstanding the error in the charge in reference to the first count.   It is true, when one count in an indictment is defective, and another count is good, and there is a general verdict, a motion in arrest cannot be sustained; for, the good count warrants the judgment, and, although the punishment is discretionary, the judgment is presumed to have been given upon the good count.

"In this case both counts are good.   There was error in the instruction given on one of the counts, by reason whereof the defendants were improperly convicted upon that count, and are entitled to a *venire de novo;* for, as his honor thought the conviction was proper on both counts, and both counts are good, we must presume that the amount of the fine imposed was fixed on, in reference to both counts; whereas, if the defendants had been acquitted upon the first count, as they should have been in our opinion, the punishment would have been imposed in reference to the last count only, which was much the less grave offence.   Indeed, the attention of the court and jury seems to have been directed exclusively to the first count; and the court believing that, according to the evidence, the defendants were guilty upon that count, it made no difference how the jury found upon the second count, which was included in the first."   A *venire de novo* was accordingly ordered.

I have tried to show, and think I have shown, that the act of 1898 (section 144) is inapplicable.

The serious results that will follow such a decision as this will appear by a few examples of indictments in two or more counts as commonly drawn:

*First.* Count for burglary and count for larceny; or, count for robbery and count for larceny. Conviction of the higher grade under erroneous instructions and sentence therefor. If the evidence justifies a jury in a conviction of larceny we must sustain the judgment except as to the sentence.

*Second.* Count for adultery and count for fornication. The evidence shows the woman to be unmarried, but the court instructs so that the jury finds a verdict of adultery. We must amend the sentence so as to keep within the limit authorized in cases of fornication, but affirm in every other respect.

*Third.* Count for rape and count for assault with intent to rape. This was the indictment in *Cook* v. *State,* 4 *Zab.* 843, on which the defendant was convicted generally. In error it was claimed that the verdict was repugnant and illegal because defendant could not be guilty of both crimes. But Chief Justice Green said the crime of rape included the assault, and therefore referred the verdict to the first count for rape. Such is undoubtedly the rule. But if the evidence does not warrant a conviction for rape, and the trial court erroneously charges that it does, we are to say that this error is cured by a mere remission of the sentence to that provided for assault with intent, &c., in section 113 of the Crimes act, if the evidence in the judgment of the reviewing court warranted a verdict for the assault. .

*Fourth.* Indictment for murder, which will support a conviction of murder in the first or second degree or of manslaughter, as though there were a separate count for each. Under erroneous instructions as to deliberation and premeditation, the verdict is guilty in the first degree. If the evidence warrants a conviction in the second degree we should so regard the verdict and modify the sentence from death to imprisonment. This, however, is not what was done in *State* v. *Mangano,* 48 *Vroom* 544, and *State* v. *Clayton,* 54 *Id.* 673, but the judgment was reversed and *venire de novo*

ordered. And yet the indictment for murder in its legal effect is a count for murder in the first degree, a count in the second degree, and a count for manslaughter.

It is said in the prevailing opinion that on an erroneous verdict for murder in the first degree the court could not say that the jury found the defendant guilty in the second degree or of manslaughter, when in fact they did neither; but in such a verdict the jury find, first, the act of killing; then they find an intent to kill existing at the instant of killing, which is second degree; and they find deliberation and premeditation. Suppose the court charged that the existence of an intent to kill at the time of killing constituted murder in the first degree, such a verdict is, of course, vitiated; but why should it not be held, on the reasoning of the main opinion, that as there was ample evidence for a conviction of second degree, and the verdict included that, the sentence should be modified to fit that crime? This is, in fact, conceded by the majority opinion in a case where a count for manslaughter actually is joined with one for murder. Consequently, if, in the case of *State* v. *Herrmann,* 48 *Vroom* 534, there had been a count for manslaughter added to the indictment, the result, instead of being a reversal for failure to charge the elements of manslaughter, should have been merely a modification of the sentence. Why such a radical difference in the final disposition of a case involving the punishment of death or a long term of imprisonment should depend upon the presence or absence of an extra count considered hitherto as purely formal, the prevailing opinion does not, to me at least, satisfactorily explain. It will be well for prosecuting attorneys to import from some other state a form of count for murder in the second degree, and add this, as well as a count for manslaughter, to all indictments for homicide, for if the conviction fail for trial error on the higher grade it may hold on the lower and save a retrial.

Again, if the conviction of the higher grade carried a disqualification with it (as in the case of embracery or perjury), and conviction of some lower grade of the same class of crime charged in another count was justified, what would become of

the disqualification, which *ipso facto* results from the conviction and is no part of the sentence? If it remains unimpared by the modification of sentence, as would apparently be the case, then the error has not been corrected by a mere modification of the sentence. The legislature might perhaps say that where there is a conviction on all of several good counts, and it is sustainable as to some and not as to others, a total reversal shall not result but the conviction stand so far as lawful. But until such a statute is enacted, the old rule must prevail.

With respect to what is said in the majority opinion about no motion having been made that the prosecution elect what count he would proceed on, it is enough to say that the granting of such motion was discretionary with the court, and no error could have been assigned on its refusal. 22 *Cyc.* 405; *Stephens* v. *State,* 24 *Vroom* 245, 247.

It seems entirely plain to me, in view of what has been said, that there is a fallacy in the prevailing opinion, and that it consists in miscalling a perfectly plain trial error an error in the sentence. The only way to correct the trial error is to reverse the judgment *in toto* and send the case back for retrial, and I shall so vote.

Justices Bergen and Kalisch, and Judges Bogert and White authorize me to say that they concur in the views above expressed.

*For affirmance*—The Chancellor, Trenchard, Voorhees, Minturn, Vredenburgh, Congdon, JJ. 6.

*For reversal*—Parker, Bergen, Kalisch, Bogert, White, JJ. 5.