STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. FRANK GALLO, PLAINTIFF IN ERROR.

Submitted October 7, 1941—Decided February 26, 1942.

Before Brogan, Chief Justice, and Justices Case and Heher.

For the defendant in error, *John H. Beekman, Jr.,* Prosecutor of the Pleas; *Joseph Halpern,* Assistant Prosecutor of the Pleas.

For the plaintiff in error, *Edmund A. Hayes.*

Brogan, Chief Justice. The plaintiff in error, Frank Gallo, was convicted in the Somerset County Court of Quarter Sessions and sentenced to fine and imprisonment. The indictment on which he was convicted contained eight counts charging that the defendant, on four certain days in January and February, 1941, kept a gambling house and on those same days aided and abetted the keeping thereof. Thus in alternate counts he was charged as principal and accessory.

The entire record is returned with the writ of error. The appeal was not argued but was submitted on brief. The plaintiff in error, in his brief, assigns error on certain exceptions taken at the trial and causes for reversal are specified. These points are seven in number and five assert error in the refusal of the learned trial judge to postpone or adjourn the trial.

Gallo was indicted on February 13th, 1941, entered plea of "not guilty" on February 21st, 1941, and the trial of the indictment moved on March 12th, 1941. These dates assume significance in the light of the argument advanced on some of the points made for reversal. On the day set for trial, counsel in the person of Edmund A. Hayes appeared for the defendant and requested an adjournment, giving as his reason therefor that he had been retained in the case only two days previously and was unable in so short a time to get ready for

trial; further, that the defendant had advised him that the case would not be moved until the following week. The state's attorney opposed the application on the ground that it was not timely and that Gallo had been represented up to then by two other attorneys, both of whom were in court when the trial was moved. The motion for postponement was denied.

It is first argued that the trial court "committed manifest and prejudicial wrong and error" in denying this application. A subordinate point under this heading is that because postponement of the trial was refused, plaintiff in error was deprived of an opportunity to produce certain non-resident witnesses. To justify the request for postponement Mr. Hayes called Samuel Chiaravalli, a member of the bar of this state, as a witness who testified: that he had been counsel of record for Gallo and that previously he wanted the trial date deferred because he was obliged to undergo an operation; that at that time he advised his clients to get new counsel; that at or about the time he left the hospital Gallo said he would like him to try the case and this he promised to do if he were able, but, in the meanwhile, other counsel was retained, a Mr. John Macko (also present when the trial was moved); that on the previous day, namely, March 11th, he told the defendant he would not be able to appear for him, saying: "I don't know whether you want to continue to have Mr. Macko or what but you had better get counsel." It is to be noted that all three attorneys, Messrs. Hayes, Chiaravalli and Macko, are listed in the record as counsel for the defendant.

The matter of postponement of a trial is one that is singularly within the sound discretion of the court. Plaintiff in error concedes this but argues that the refusal in this instance amounted to an abuse of discretion, citing *State* v. *Lynch,* 103 *N. J. L.* 64. The denial of a postponement should not lead to a reversal unless it appears that the defendant suffered manifest wrong or injury by such refusal. *State* v. *Doro,* 103 *Id.* 88, 93; *State* v. *Juliano,* 103 *Id.* 663; *State* v. *Zied,* 116 *Id.* 234, 239. The issue in this case, from our reading of the record, seems to have been tried fully and comprehensively. We cannot perceive that the plaintiff in error suf-

fered harm by the denial of a postponement. It is clear, too, that Mr. Chiaravalli had or should have prepared this case for trial and that he expected to try it since it was only on the day preceding the trial that his indisposition led him to suggest that his client get other counsel. He admitted that he did not "expect to find other counsel" in the case on the day of the trial; this "surprise" on his part leads us to conclude that he himself expected to try the case. Again, Mr. Chiaravalli was present during the entire trial as was Mr. Macko. If Mr. Chiaravalli was ready to try the case—and it is not said that he was not—certainly he was sufficient aid to trial counsel if aid was needed. An "eleventh hour" change of counsel is not, standing alone, a valid reason for an adjournment. The abuse that would result from such rule is obvious. Under this heading it is also argued that the defendant was deprived of the opportunity to produce certain witnesses, one of whom was in Philadelphia. The point has no substance whatever. It is not even said in this connection that such witnesses were material or that they would have lent any support to the defense. But along with all this we cannot overlook the fact that Mr. Chiaravalli is presumed to have prepared the case; that he anticipated trying the issue and that in the normal course he would or should have arranged for the appearance of all defense witnesses, especially those from outside the state. The learned trial judge had these circumstances and conditions in mind when he refused an adjournment and his ruling was not an abuse of discretion.

The next argument is that it was error to refuse an adjournment because of a remark made by the assistant prosecutor in the presence of the jury panel before the jurors were selected. That situation arose in this fashion: The assistant prosecutor opposed the adjournment and said he had had no notice of it and that if he had been informed a day or two previously his attitude might have been different. He called attention to the fact that the defendant had two attorneys in court besides Mr. Hayes, who was trial counsel, and then remarked: "*　*　*. As late as yesterday afternoon Mr. Macko spoke to the court with reference to this case and a possible plea by this defendant　*　*　*;" whereupon trial

counsel said that the statement of the assistant prosecutor was so prejudicial and harmful that "under no circumstances can this court continue to hear this trial before this jury." Again motion for postponement was made. The trial court rejected it, and properly so. The statement of the assistant prosecutor was made to impress the court with the fact that as recently as the day before Mr. Macko appeared in court as counsel for the defendant. It is not said that the assistant prosecutor's statement was untrue and we find nothing that persuades us that what was said could have unquestionably prejudiced the jury against the defendant or just how the defendant was injuriously affected; *Cf. State* v. *Shupe,* 86 *N. J. L.* 410; *affirmed,* 88 *Id.* 610; nor is there proof that the panel of jurors heard the remark. However that may be, the learned trial judge was careful to safeguard defendant from any injury in this connection. When the trial judge began his charge to the jury he said: "You will recall that there was considerable discussion between court and counsel in the impaneling of this jury. I charge you that nothing that was said on that occasion is to be considered by you in your deliberations in respect to the guilt or innocence of the defendant and * * * the facts that you are to judge are those presented to you from the lips of witnesses sworn in this trial."

It is said under the third point that the court erred in refusing a postponement because of the presence of only forty-nine talesmen and, further, that because twenty-four of this number "had sat as members of a jury to try other cases wherein the question of maintenance and keeping of the gambling house that plaintiff in error was charged with maintaining was at issue and had by their verdict indicated that those charged under the indictment were guilty." The challenge to the array was orally made. It should have been in writing. *State* v. *Dedge,* 101 *N. J. L.* 131; *State* v. *Simmons,* 120 *Id.* 85, 87. That should end consideration of this point. But an examination of the merits persuades us that it has no substance. The plaintiff in error concedes that the trial court may excuse jurors or proceed even though some jurors on the printed list are absent. *State* v. *Rosenthal,* 85 *Id.* 564; *affirmed,* 86 *Id.* 705. Nor is it any ground for

challenge to the array that some of the jurors sat on a case previously determined which concerned a like issue. *State* v. *Carlino,* 99 *Id.* 292. Any juror who sat in a case of like nature, and concerning the same establishment with which defendant was said to be connected, might have been inter- rogated as a basis for challenge for bias and partiality. That has been the rule from the days of common law. 4 *Blk. Com.* 352; 2 *Tidd's Practice* *p. 852.

Under the next heading it is argued that defendant's rights were invaded by refusal of a postponement because of certain other remarks charged to the state's attorney. This is the episode: Counsel for the defendant said that twenty-four of the forty-nine jurors of the panel sat in judgment on other cases "identical and similar to this case" to which prosecutor replied: "* * * the suggestions of counsel are a reflection upon the integrity and intelligence of the jurors drawn from this panel. I should think that counsel would be ashamed to make any suggestion that they cannot give this defendant a fair trial when they are sworn on their oath to give a fair trial." We think that any possible mischief that might have resulted from such statement was cured by the admonition of the trial judge to the jury, which has been mentioned above. But, in addition, immediately after this unnecessary rejoinder, the court was careful to say—"The jury will be instructed to hear and determine this case solely on the evidence and that any remarks of counsel at this or any other time are not to be interpreted against the defendant except as fair com- ment upon evidence submitted. In other words these remarks of counsel are not to be considered in anywise by any member of the jury who may be impaneled." We see nothing in the point that calls for a reversal of the ultimate judgment.

Under the fifth point it is said that the court fell into error in admitting certain exhibits, *S*-14 and *S*-16. The former was a chart, found on the premises at the time the state's officers raided the alleged gambling establishment. On the chart the days of the week and certain names were listed; the first name was "Gallo." The testimony tended to show that this chart was a working schedule and governed the engagements of the individuals working in or conducting the

gambling place and that it had not been tampered with. The latter exhibit was a diary without dates. As to this we think it only necessary to say that it partook of the same quality of evidence as the former exhibit. The objection to $S$-14 is that it was not connected with the offenses said to have been committed by the defendant on the dates mentioned in the indictment, i. e., that the chart did not tend to prove that Gallo worked in the establishment on any particular day and date. But this is of no value to the plaintiff in error. A witness, Efinger, who claimed to be a partner of Gallo, said that the chart was a standing working schedule and had not been changed and that it was a continuing schedule until another was made up. The testimony of this witness made it clear that the chart was the controlling schedule at the time Gallo was charged to have been principal or abettor as charged in the indictment. It was some proof of the connection of Gallo with the operation of the gambling establishment. Thus it was material and relevant and was sufficiently proved to be competent. $S$-16, the book about which complaint is now made, was received in evidence without objection. The court did not rule on it; consequently it may not be assigned for error. As proof it was merely cumulative.

The two final points, the sixth and seventh, are that the court erred in rejecting motion in arrest of judgment on the ground that the state had failed to prove that on the dates mentioned in the indictment the defendant was guilty of the crimes charged and that judgment should have been arrested for the further reason that the jury convicted the defendant on all eight counts in the indictment wherein four charged him as a principal and the other four as an aider and abettor; that this was a fatal inconsistency since, as a matter of law, the defendant could only be convicted either as a principal or as an accessory but not as both at the same time. The argument of the former of these points is that on the dates in question Gallo was enroute to or actually in the State of Florida; that the only evidence in the case is to the effect that Gallo had not been in the establishment for a period of six weeks before the raid; that he had not continued to be a partner or operator of the business during that time. In

substance, it said that the evidence does not support the charge. This point cannot be raised on motion to arrest judgment. Judgment will be arrested only for errors in the record which may not be cured by amendment. The testimony at the trial forms no part of the record. Lack of testimony sufficient to convict or even the absence thereof cannot be raised by motion in arrest of judgment. *Cf. Powe* v. *State,* 48 *N. J. L.* 34; 2 *Atl. Rep.* 662; *State* v. *Kelly,* 84 *N. J. L.* 1; 87 *Atl. Rep.* 128; *affirmed,* 86 *N. J. L.* 704; 94 *Atl. Rep.* 1103, and a long line of cases to this effect. Even if we were to treat this as an argument directed against the sufficient weight of the evidence, still there would be no merit to it. The witness, Efinger, said that he, Gallo and another were the owners of the place. The witness, Shulman, testified that he had acquired an interest in this establishment from Gallo. Other witnesses gave testimony that supported defendant's guilt. Gallo himself said that he operated this poolroom from June, 1929, as his sole occupation and when business fell off he took in partners. His testimony admits that at one time he was in the poolroom business with Shulman and that their arrangement was that he was to get 25% of any profits while bearing none of the losses. All in all, it was a question for the jury. The sufficiency of the evidence is not argued. If it were, it would have been of no avail.

As to the final point under this heading—that it was inconsistent to convict defendant on all eight counts in four of which he was charged as principal and the remainder as an abettor—it is only necessary to point out that the court suspended sentence on the convictions for the lessor offense. Furthermore, it is settled law that a general verdict of guilty will stand where it may be upheld as to any one of several counts. The plaintiff in error concedes that there could be a conviction on either group of the counts.. The jury's verdict, inconsistent as we may concede it to be, does not serve to reverse the judgment. The plaintiff in error suffered no harm or injury in the premises. At the outset of the case, this question might have been eliminated by motion to compel the state to elect upon which theory it was proceeding. But this was not done. *State* v. *Huggins,* 84 *N. J. L.* 254, 258;

87 *Atl. Rep.* 630; *State* v. *Verona,* 93 *N. J. L.* 389; 108 *Atl. Rep.* 250.

The judgment should be affirmed.