**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4920-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KEVIN GRAHAM,

     Defendant-Appellant.

_____

          Submitted May 14, 2019 – Decided June 18, 2019

          Before Judges Yannotti and Natali.

          On appeal from Superior Court of New Jersey, Law Division, Gloucester County, Municipal Appeal No. 18-17.

          Law Offices of Andrew N. Yurick, attorneys for appellant (Andrew N. Yurick, on the brief).

          Charles A. Fiore, Gloucester County Prosecutor, attorney for respondent (Jonathan Grekstas, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals from a May 21, 2018 decision of the Law Division, which found him guilty on two complaints of harassment. We affirm.

I.

On March 8, 2017, M.P. filed complaint-summons S-2017-0236-0811 with the Monroe Township police department, charging defendant with harassment.[1] M.P. alleged defendant repeatedly said hello to her at a Wawa store, even though M.P. was ignoring him. M.P. alleged that defendant followed her around the store saying, "I will see you in court." She also alleged defendant followed her in his car when she left the store and she had to take a different route home.

On May 31, 2017, M.P. filed complaint-summons S-2017-0637-0811, which also charged defendant with harassment. She alleged defendant engaged in a course of harassment dating back to 2015. M.P. claimed defendant had repeatedly asked her to work for him, repeatedly contacted her electronically through social media and text messages, and stood outside the window of her car when she was parked at a Walmart store.

---

[1] We refer to the complainant and other individuals using initials, in order to protect their privacy.

A-4920-17T3

On August 3, 2017, the municipal court judge conducted a trial on the complaints. At the trial, M.P. testified that in October 2015, she was working as a waitress at a sports bar. Defendant was at the bar with a female friend. M.P. was not serving them, but defendant approached M.P. and asked if she wanted to work for him at a club in Atlantic City. M.P. told defendant she was not interested. Defendant then "ask[ed] [her] on a date for his girlfriend." M.P. said she "politely" asked defendant to leave her alone.

According to M.P., in the following months, defendant returned to the sports bar four to six times. She testified that defendant followed her around the bar and repeatedly asked her to work for him. She told him she was not interested. M.P. stated that thereafter, defendant did not return to the sports bar for a while.

M.P. further testified that one day, she went with her brother to a Walmart store in Turnersville. She remained in the car while her brother entered the store. Unbeknownst to M.P., she had parked next to defendant's car. M.P. saw defendant and a "little boy," whom she thought was defendant's son. M.P. stated that defendant stood by the passenger window of her car and stared at her for several minutes.

A-4920-17T3

M.P. further testified that sometime in 2016, defendant returned to the sports bar. She said defendant tried to talk to her and at one point, banged on the kitchen window to get her attention. M.P. stated that she spoke to her boss and asked her to remove defendant from the premises. Apparently, M.P.'s boss told defendant he would not be welcome at the sports bar for a few months. Defendant threatened to sue the bar for discrimination. He claimed the bar had denied him service because of his weight.

M.P. also testified that on March 8, 2017, between 12 noon and 2:00 p.m., she was in a Wawa store in Monroe Township and approached the register. M.P. saw defendant "checking out and getting ready to leave" the store. As she was waiting in line, defendant came up to her and said hello at least twice. M.P. ignored him.

M.P. purchased something to eat and went to the area where patrons pick up their orders. According to M.P., defendant came to the pick-up area and repeatedly said, "I will see you in court." M.P. told defendant three times to leave her alone, after which defendant left the store.

M.P. stated that when she got into her car, defendant's car pulled up behind her car. She drove out of the parking lot, and defendant followed her in his car for about thirty seconds. M.P. said that for about a quarter of a mile, she turned

4

onto different streets to prevent defendant from following her. Defendant stopped following her. M.P. drove to the police station to report the incident.

According to M.P., during the time these various incidents were occurring, defendant repeatedly contacted her electronically. M.P. said she received a message on Facebook to the effect of "Hey, how you doing?" Defendant sent other messages to her, and she responded twice with very short messages. M.P. eventually blocked defendant from sending her additional messages.

M.P. also said that defendant obtained her phone number and started to send her text messages. She stated that after defendant revealed who he was, she blocked his phone number. M.P. obtained a new phone and phone number, and defendant began texting her again in late 2016.

Defendant sent M.P. a text message, and M.P. asked who was sending the message. After M.P. pressed him for a response, defendant revealed he was the sender and defendant asked M.P. to work for him. M.P. responded, "If you come into my job again, I'm calling the cops, because you are harassing me. Do not reply to this text message either." M.P. again asked defendant not to come to the sports bar and defendant replied, "You wish. Bye Hater" and said, "See you in court." M.P. apparently blocked defendant's phone number again.

A-4920-17T3

After the State completed the presentation of its case, defendant moved for a judgment of acquittal, arguing that the State had not established a prima facie case of harassment under N.J.S.A. 2C:33-4. Defendant contended that the State had not presented sufficient evidence to show that he intended to annoy or alarm M.P. He claimed that because there was a legitimate reason or purpose for his comments, they did not constitute harassment under the law. The judge denied the motion.

Defendant then testified that he had been at the sports bar where M.P. worked three or four times. He said that in 2015, he asked M.P. if she wanted to model or help market his club in Atlantic City. According to defendant, M.P. said she was interested and gave defendant her phone number.

Defendant also testified that one night, while she was inebriated, M.P. gave him another phone number. Defendant said M.P. told him she had changed her phone number because of an ex-boyfriend. Defendant stated that he sent M.P. about a half dozen text messages over two years.

Defendant denied M.P.'s claim that he approached her car in the parking lot of the Walmart store. Defendant also said that at the Wawa store, he had ordered a sandwich and paid for it at the front counter. Defendant said "hello" or "hi" to M.P. twice, and M.P. definitely heard him, but she did not respond.

6

Defendant then told M.P. "I'll see you in court" because he "had to let her know that [they] . . . would be seeing each other . . . again in court." Defendant said he then went to wait for his sandwich. He stated that he did not follow M.P. into that area and he denied following her in his car.

Defendant further testified that he tried to find M.P. on Facebook, but was unable to do so because he did not know her last name. Defendant knew M.P.'s first name, but only knew her last name started with a "P." Defendant stated that he did not intend to harass M.P. and was not trying to annoy her.

J.G. testified for the defense. J.G. said she was with defendant at the sports bar in November 2016. She testified that she did not see any contact between defendant and M.P. J.G. also said that she did not see defendant follow M.P. around the bar, or hear M.P. say, "leave me alone." She testified that she was with defendant when he was "kicked out" of the sports bar. She stated that she did not see M.P. on that occasion.

Defendant also called C.M. as a witness. She testified that she has accompanied defendant to the sports bar, and she was at the sports bar in November 2016. She testified that on that date, she did not see any interaction between defendant and M.P.

After hearing closing arguments by the attorneys, the municipal court judge placed an oral decision on the record. The judge stated that M.P. was a credible witness and defendant's testimony was "self-serving and somewhat unreliable." The judge found that the State had proven, beyond a reasonable doubt, that defendant committed harassment in violation of N.J.S.A. 2C:33-4(c) because he engaged in a "course of alarming conduct" over a significant period of time, with the purpose to alarm or seriously annoy M.P.

The judge noted that M.P. had testified to incidents at the sports bar, the Wawa store, and the Walmart. M.P. also had testified about the text messages that defendant sent to her. The judge found that defendant had engaged in this conduct with a purpose to annoy, bother, or harass M.P. The judge also rejected defendant's contention that his communications with M.P. were protected speech under the First Amendment to the United States Constitution.

The judge merged the two complaints and sentenced defendant to one year of probation with a no-contact provision. The judge also imposed appropriate fines, penalties, and costs. The judge suspended the sentence for two weeks to allow defendant's attorney to explore the possibility of a conditional dismissal. Defendant then filed an appeal to the Law Division.

The Law Division judge considered the matter on April 27, 2018, and filed a written opinion dated May 21, 2018. The judge accepted the municipal court's credibility findings and found that defendant had engaged in a "course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy" M.P., in violation of N.J.S.A. 2C:33-4(c).

The judge noted that the incidents that M.P. had described took place over a two-year period. The judge stated that, although M.P. repeatedly told defendant to leave her alone, defendant "continued to come to [M.P.'s] place of employment, follow her, text her, message her, and contact her." The judge "f[ound] that these series of events constitute a course of alarming conduct or repeatedly committed acts."

The judge also found that defendant acted with a purpose to harass M.P. The judge noted that defendant had continually attempted to contact M.P. even though she repeatedly told him not to do so. The judge found that defendant "was clearly aware that [M.P.] did not wish to speak with him, yet he continued to make contact with her, offer her a job, and follow her." The judge concluded that the State had proven beyond a reasonable doubt that defendant was guilty of harassment under N.J.S.A. 2C:33-4(c).

This appeal followed. On appeal defendant argues:

A-4920-17T3

[POINT I
THE RECORD BELOW DOES NOT SUPPORT A
FINDING OF HARASSMENT.

POINT II
THE WALMART INCIDENT SHOULD NOT HAVE
BEEN CONSIDERED BY THE COURTS BELOW.
(Not raised in municipal court or Law Division).

POINT III
THE CONDUCT WHICH LED TO THE
DEFENDANT'S CONVICTION WAS PROTECTED
SPEECH UNDER THE FIRST AMENDMENT OF
THE U.S. CONSTITUTION. (Not raised in Law
Division, but raised in municipal court).

POINT IV
THE DEFENDANT'S CONVICTION SHOULD BE
OVERTURNED BASED ON DUE PROCESS
GROUNDS. (Not Raised in Law Division, but raised
in municipal court).]

II.

Defendant argues there is insufficient evidence in the record to support his conviction. Defendant contends the evidence does not support the Law Division judge's conclusion that he "[e]ngage[d] in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy" M.P. We disagree.

Our review of a trial court's judgment affirming a municipal court conviction "is limited to 'whether the findings made [by the trial court] could

10                                                        A-4920-17T3

reasonably have been reached on sufficient credible evidence present in the record.'" State v. Kuropchak, 221 N.J. 368, 382-83 (2015) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). An "[a]ppellate court[] should defer to trial courts' credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted on the record." State v. Locurto, 157 N.J. 463, 474 (1999) (citing State v. Jamerson, 153 N.J. 318, 341 (1998); Dolson v. Anastasia, 55 N.J. 2, 7 (1969); Johnson, 42 N.J. at 161).

Furthermore, our deference to the trial court's fact-finding is especially appropriate where, as in this case, "two lower courts have entered concurrent judgments on purely factual issues." Ibid. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid. (citing Midler v. Heinowitz, 10 N.J. 123, 128-29 (1952)).

N.J.S.A. 2C:33-4 provides in pertinent part:

> Except as provided in subsection e., a person commits a petty disorderly persons offense if, with purpose to harass another, he:
>
> . . . .

A-4920-17T3

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

A court must make its determination of whether a defendant has engaged in a "course of alarming conduct" on a case-by-case basis. State v. Hoffman, 149 N.J. 564, 581 (1997). Moreover, "serious annoyance under subsection (c) means to weary, worry, trouble, or offend." Ibid.

On appeal, defendant argues that his contacts with M.P. were too sporadic to constitute a course of alarming conduct or a course of repeatedly committed acts under N.J.S.A. 2C:33-4(c). He also argues that the evidence does not support a finding that his purpose was to alarm or seriously annoy M.P. We are convinced, however, that there is sufficient credible evidence in the record to support the judge's finding that defendant's conduct, as detailed in M.P.'s testimony, constituted harassment under N.J.S.A. 2C:33-4(c).

The evidence supports the trial court's finding that defendant's conduct constituted a "course of alarming conduct or of repeatedly committed acts." The judge noted that despite being told to leave her alone, defendant continued to come to M.P.'s place of employment, follow her, send messages to her, and contact her, even though M.P. told him not to do so. The evidence also supports the trial court's finding that defendant acted with a purpose to harass M.P. The

judge noted that defendant was clearly aware that M.P. did not wish to speak with him, but he continued to contact her, offer her a job, and follow her.

We therefore conclude that the record supports the trial court's determination that the State had proven, beyond a reasonable doubt, that defendant harassed M.P. in violation of N.J.S.A. 2C:33-4(c).

### III.

Next, defendant argues that the courts below should not have considered evidence regarding the Walmart incident because M.P. did not establish a specific date or time period for this incident, and the municipal court allegedly lacked jurisdiction over this incident. We note that defendant did not raise these arguments in the municipal court or the Law Division. In any event, we conclude neither argument has merit.

We reject defendant's contention that the municipal court and the Law Division erred by considering the Walmart incident because M.P.'s testimony as to the date or time of this incident was not specific. Although M.P. did not identify when the Walmart incident occurred, both the municipal court and Law Division judges found M.P.'s account credible and concluded that it had happened, as she claimed. The fact that M.P. did not specifically identify when this incident occurred goes to the weight, not the admissibility of this evidence.

13

We also reject defendant's contention that the municipal court did not have jurisdiction to consider this incident. A municipal court only has "jurisdiction over cases arising within the territory of that municipality[.]" N.J.S.A. 2B:12-16. Where "the statute defining the offense is not explicit [on the question of jurisdiction], the place where the offense was committed . . . must be determined from the nature of the offense charged and the location of the act or acts constituting it." State v. Halleran, 181 N.J. Super. 542, 547 (App. Div. 1981) (citations omitted).

In Halleran, we held a municipal court had jurisdiction to find the defendant guilty of harassment under N.J.S.A. 2C:33-4(a) for calling her ex-husband anonymously with the purpose of harassing him. Id. at 544-48. We held that because a phone call must be placed and received, "the offense [was] of a continuing nature, [and] can be prosecuted either in the municipality from which the proscribed call was made or in the municipality in which it [was] received." Id. at 548.

In this case, defendant was found guilty of harassment under N.J.S.A. 2C:33-4(c), based upon evidence that he engaged in a "course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." The Monroe Township municipal court had

14

jurisdiction to consider the Walmart incident because, even though the incident did not occur in Monroe Township, it was part of a course of alarming conduct, undertaken with the purpose to alarm or seriously annoy M.P., which occurred in the Township and other jurisdictions.

Furthermore, even if the municipal court erred by considering the Walmart incident, the error was not "clearly capable of producing an unjust result." See R. 2:10-2. At the trial of this matter, the State presented other evidence, which was sufficient to establish beyond a reasonable doubt that defendant was guilty of harassment, in violation of N.J.S.A. 2C:33-4(c).

IV.

Next, defendant argues his conviction should be set aside because the conduct for which he was found guilty was speech protected by the First Amendment to the United States Constitution. Again, we disagree.

In State v. Burkert, 231 N.J. 257, 280 (2017), the Court stated that N.J.S.A. 2C:33-4(c) established a "vague[] and broadly worded standard" that "ha[d] the capacity to chill permissible speech." The Court noted that "[s]peech . . . cannot be transformed into criminal conduct merely because it annoys, disturbs, or arouses contempt." Id. at 281 (citing Houston v. Hill, 482 U.S. 451, 461 (1987)).

A-4920-17T3

The Court stated, however, that neither the First Amendment, nor Article I, Paragraph 6 of the State Constitution, prohibits "speech that is integral to criminal conduct, speech that physically threatens or terrorizes another, or speech that is intended to incite imminent unlawful conduct." Ibid. (citing United States v. Alvarez, 567 U.S. 709 (2012)). The Court also stated that the First Amendment does not prohibit "states from enacting laws that punish expressive activity when 'substantial privacy interests are being invaded in an essentially intolerable manner.'" Id. at 282 (citing Cohen v. California, 403 U.S. 15, 21 (1971)).

Thus, the Court interpreted the broad language of N.J.S.A. 2C:33-4(c) in light of "the principles animating our free-speech guarantees." Id. at 284. The Court stated that to "save the statute from constitutional infirmity" the terms "alarming conduct" and "acts with purpose to alarm or seriously annoy" had to "be defined in more concrete terms consonant with the free-speech clauses of our Federal and State Constitutions." Ibid.

The Court therefore interpreted the phrases "any other course of alarming conduct" and "acts with purpose to alarm or seriously annoy" to mean "repeated communications directed at a person that reasonably put that person in fear for

his safety or security or that intolerably interfere with that person's reasonable expectation of privacy." Id. at 284-85. The Court explained:

> To be clear, the standard set forth above applies only in those cases where the alleged harassing conduct is based on pure expressive activity. Under that standard, repeated threats or menacing communications that reasonably place a person in fear for his safety or security are not protective expressive activities. Likewise, a person who repeatedly makes unwanted communications to a subject, thereby intolerably interfering with his reasonable expectation of privacy, will not find shelter behind the First Amendment. Thus, a person who every day, over the course of a week, either repeatedly yells outside an ex-partner's house during the night, or repeatedly follows closely next to a woman importuning her for a date or making other unwanted comments, despite constant demands to stop, would violate subsection (c).
>
> [Id. at 285.]

As stated previously, the record shows that defendant repeatedly communicated with M.P., even though she told him not to do so. M.P. had a reasonable expectation of privacy in being free from such unwanted communications. Moreover, defendant's conviction under N.J.S.A. 2C:33-4(c) was not based solely on his oral communications. It was also based on his actions, which included going to M.P.'s place of employment, standing outside her car in the Walmart parking lot, and following her car.

17

We therefore conclude that defendant's conviction does not violate defendant's right to free speech under the First Amendment.

V.

Defendant also argues that his conviction should be reversed on due process grounds. He contends the municipal court judge erred by refusing to again postpone the trial because several witnesses whom defendant subpoenaed did not appear for trial, and because defendant wanted additional time to investigate the security footage at the Wawa store and to produce the record-keeper for the footage.

"The granting of trial adjournments rests within the sound discretion of the trial court. Absent an abuse of discretion, denial of a request for an adjournment does not constitute reversible error." State v. Smith, 87 N.J. Super. 98, 105-06 (App. Div. 1965) (citing State v. Smith, 66 N.J. Super. 465, 468 (App. Div. 1961), aff'd, 36 N.J. 307 (1962); State v. Gallo, 128 N.J.L. 172 (Sup. Ct. 1942), aff'd o.b., 129 N.J.L. 52 (E. & A. 1942)).

We are convinced that the municipal court judge did not err by denying defendant's request for a further postponement of the trial. The record shows that the complaints had been pending for five months, and the matter had already

18

been adjourned a number of times.  Defendant had sufficient time to obtain the footage from the surveillance camera in the Wawa store.

Moreover, the trial was held five months after the alleged incident at the Wawa store, and the record indicates that it was unlikely the footage was still available.  Defendant was informed by letter that after twenty-five to thirty days, the store records over the surveillance footage.  Defendant also failed to show that the Wawa's custodian of the surveillance footage knew of the contents of the recording, or had any other relevant evidence.

In addition, defendant failed to show that the witnesses who failed to appear would have been able to offer material evidence.  It appears that some of the subpoenaed witnesses were Wawa employees, and defendant intended to call the others as character witnesses.

In her decision on the motion, the municipal court judge noted that these individuals "were not either employed or aware of the circumstances[,] . . . would not have been able to shed any light on it and . . . it would have been a waste of not . . . only their time, but the [c]ourt's time to have them here."  The record supports the judge's findings.

We therefore conclude that the municipal court judge did not abuse her discretion in denying defendant's adjournment request, and defendant was not denied due process.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4920-17T3